**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATURAL HAIR GROWTH CENTERS OF ARIZONA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ANGELA EDMUND; EDMUND'S HOLDINGS, LLC,<br><br>Defendants. | Case No.: 3:19-cv-00026-H-BGS<br><br>**ORDER GRANTING RENEWED MOTION FOR DEFAULT JUDGMENT**<br><br>**[Doc. Nos. 10, 12]** |

On April 8, 2019, Plaintiff Natural Hair Growth Centers of Arizona, LLC filed a motion for default judgment against Defendants Angela Edmund and Edmund's Holdings, LLC. (Doc. No. 10.) To date, Defendants have not appeared in this case. On April 19, 2019, the Court denied without prejudice Plaintiff's motion, concluding that it had failed to meet the burden of showing that the Court has personal jurisdiction over Defendants. (Doc. No. 11.) The Court ordered Plaintiff to show cause why the Court should not dismiss or transfer the case for lack of personal jurisdiction. (Id.) On May 3, 2019, Plaintiff responded to the order to show cause with supplemental information. (Doc. No. 12.) The Court construes Plaintiff's response to the order to show cause as renewing his motion for default judgment. For the reasons below, the Court grants Plaintiff's renewed motion for default judgment and for attorney's fees and costs.

Plaintiff, a company incorporated in Arizona and with its principal place of business in California, produces and sells hair loss products and related services. (Doc. Nos. 1 ¶ 11; 12 at 3.) Plaintiff does business as Evolution Hair Loss Institute and maintains the website domain hairgrowthcenters.com. (Doc. No. 1 ¶ 13.) Plaintiff had a brick-and-mortar clinic in Tempe, Arizona ("the Arizona clinic"), until 2015 when Plaintiff's founder, William Gaunitz, moved to San Diego County, California. (Id. ¶ 14.) Because Gaunitz could no longer effectively run the Arizona clinic, he asked on Facebook that his Facebook friends gauge interest in purchasing the Arizona clinic. (Id. ¶ 15.) Edmund, who formed Edmund's Holdings, LLC on May 18, 2017, contacted Gaunitz expressing interest in purchasing the Arizona clinic. (Id. ¶ 16, 18; Doc. No. 12 at 4.) Edmund then came to Carlsbad, California to meet with Gaunitz, and the two entered into the Asset Purchase Agreement ("the Agreement") for sale of the Arizona clinic's assets on June 16, 2017. (Id. ¶¶ 17–18.) The Agreement expressly excluded from the transfer "all Intellectual Property rights including copyrights, trademarks, patents and patentable works, and trade secrets not specifically disclosed to Seller for Seller's use prior to Closing. Further, Seller requires Buyer the change the dba of the business from 'Evolution Hair Loss Institute' to 'Revolution Hair Loss and Skin Institute' to avoid risk of confusion with Seller's ongoing businesses." (Id. ¶ 19.)

The parties maintained regular contact for a period of time in order for Gaunitz to assist Edmund, who had no prior experience running such a clinic. (Doc. No. 12 at 5.) Under the Agreement, Edmund was required to make monthly payments towards the purchase price, but soon defaulted on such payments. (Doc. No. 1 ¶¶ 20–21.) Edmund began using Plaintiff's photographs and other copyrighted material on the website revolutionhairloss.com. (Id. ¶ 23.) Most images used by Edmund included Plaintiff's watermark. (Id. ¶ 32.) At some point, Plaintiff discovered that Edmund was selling products from outside vendors, allegedly in violation of the Agreement, and soliciting such products to Plaintiff's clients using Plaintiff's trade secret client list, which Plaintiff

alleges Edmund wrongfully gained access to. (Id. ¶ 24.) At least two clients who received such solicitations from Edmund are California residents. (Doc. No. 12 at 7.) Plaintiff sent a letter demanding payment, and that Edmund cease and desist using Plaintiff's copyrighted works. (Doc. No. 1 ¶ 25.) Edmund failed to respond, and therefore Plaintiff sent takedown notices pursuant to the Digital Millennium Copyright Act ("DMCA") to Edmund's website host and social media providers in order to remove the allegedly infringing content. (Id. ¶ 27.) In response, Edmund removed Plaintiff's watermark and added her own watermark to two of the images. (Id. ¶ 32.) Facebook and Instagram removed the images, and Edmund's website host suspended the website. (Id. ¶¶ 28–29.) Edmund moved the website to a new host and posted different copyrighted images belonging to Plaintiff. (Id. ¶ 30.) Those images were ultimately removed pursuant to another DMCA takedown notice. (Id. ¶ 31.) Plaintiff also alleges that Edmund contacted Yelp to have Evolution's business listing on the cite transferred to her twice. (Id. ¶ 32.)

Accordingly, Plaintiff filed the present case on January 4, 2019 against Edmund and Edmund's Holdings, LLC alleging claims for copyright infringement, false or altered copyright management information, misappropriation of trade secrets, and intentional inference with economic advantage and contract. (Doc. No. 1.) On February 14, 2019, Plaintiff filed its return of service showing that Edmund was served at her home. (Doc. No. 4.) Defendants never answered or otherwise appeared in this case. On March 8, 2019, the Clerk entered default as to Edmund and Edmund's Holdings, LLC. (Doc. Nos. 7, 8.) On April 8, 2019, Plaintiff moved for default judgment on its claims for copyright infringement and falsification or alteration of copyright management information. (Doc. No. 10.) The Court denied the motion without prejudice for lack of personal jurisdiction over Defendants and ordered Plaintiff to show cause why the action should not be dismissed or transferred. (Doc. No. 11.) On May 3, 2019, Plaintiff responded to the order to show cause, providing the Court with additional information. (Doc. No. 12.) The Court construes this as renewing Plaintiff's motion for default judgment.

/ / /

## I. Service of Process

The Court must determine whether Defendants were properly served with notice of this case. See HTS, Inc. v. Boley, 954 F. Supp. 2d 927, 937–38 (D. Ariz. 2013); see also Mason v. Genisco Tech. Corp., 960 F.2d 849, 851 (9th Cir. 1992) ("A person is not bound by a judgment in a litigation to which he or she has not been made a party by service of process."). Federal Rule of Civil Procedure 4(e) provides that an individual may be served by personal delivery, by leaving a copy at the individual's usual place of abode with someone who resides there, by delivery of a copy to an authorized agent, or as prescribed by state law. Federal Rule of Civil Procedure 4(h) provides that a corporation, partnership, or association may be served by delivery to an agent authorized by appointment or by law to receive service of process, or as prescribed by state law. Here, Plaintiff's return of service shows that Edmund was served at her home. (Doc. No. 4.) She was served both in her individual capacity and as in her capacity as the statutory agent for Edmund's Holdings, LLC. (Id.) Accordingly, the Court concludes that Plaintiff has demonstrated proper service of process on both Defendants.

## II. Jurisdiction

The Court has the affirmative duty to ensure proper subject matter jurisdiction and personal jurisdiction when a party seeks default judgment. In re Tuli, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court has subject matter jurisdiction over Plaintiff's copyright claims because such claims arise under federal law.

As for personal jurisdiction, after review of Plaintiff's response to the order to show cause, the Court concludes that it has specific personal jurisdiction over Defendants. "It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant." Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001). When no federal statute governs personal jurisdiction, a court applies the law of the state in which it is located. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). California's long-arm statute allows the Court to exercise personal jurisdiction to the

extent permitted by the Due Process Clause of the U.S. Constitution. Cal. Civ. Proc. Code § 410.10. The Due Process Clause requires that a nonresident defendant have "minimum contact" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945). Personal jurisdiction can be general or specific. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415–16 (1984). "For general jurisdiction to exist, a defendant must engage in continuous and systematic general business contacts that approximate physical presence in the forum state[.]" Mavrix, 647 F.3d at 1223–24 (9th Cir. 2011) (internal quotation marks and citations omitted). This "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004).

As for specific jurisdiction, the Court uses a three-prong test: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." Mavrix, 647 F.3d at 1227–28 (citing Schwarzenegger, 374 F.3d at 802). A plaintiff bears the burden of satisfying the first two prongs, then the burden shifts to the defendant "to set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." Id. at 1228 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–78 (1985)).

The Court concludes Plaintiff has alleged sufficient facts to support a finding of specific jurisdiction over Defendants. Here, only the first prong is at issue. The second prong is met because Plaintiff's copyright claims arise out of Defendants publications of photographs on a website accessible to users in California. See id. The third prong is not

at issue because Defendants have not appeared in this case.

On the first prong, courts apply a purposeful direction analysis to copyright claims. Id. at 1228. In order to show that a defendant purposefully directed his activities at the forum state, courts apply the effects test, which requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Id. (citation omitted). The Ninth Circuit has explained whether an act is "expressly aimed at the forum state" in the context of posting copyrighted material on a website:

> On the one hand, we have made clear that maintenance of a passive website alone cannot satisfy the express aiming prong. On the other, we have held that operating even a passive website in conjunction with "something more"—conduct directly targeting the forum—is sufficient. In determining whether a nonresident defendant has done "something more," we have considered several factors, including the interactivity of the defendant's website; the geographic scope of the defendant's commercial ambitions; and whether the defendant "individually targeted" a plaintiff known to be a forum resident.

Id. (internal citations and quotation marks omitted).

Based on Plaintiff's allegations in the complaint and its response to the order to show cause, the Court concludes that Plaintiff has met the effects test. First, the Court concludes that Plaintiff has sufficiently alleged that Defendants committed an intentional act by using Plaintiff's copyrighted material, including watermarked photographs, and by placing a "Revolution Hair Loss Institute ©" watermark on such photographs. (See Doc. No. 1 ¶¶ 36–60.) Second, the Court concludes that Plaintiff sufficiently alleges that Defendants did "something more" to directly target California than merely passively operate a website. Defendants individually targeted Gaunitz, who Edmund knew to be a California resident. Edmund reached out to Gaunitz after he had publicized on social media that he had moved to California and was looking to sell the Arizona clinic. (Doc. No. 12 at 4.) Edmund then traveled to Carlsbad, California to meet with Gaunitz and enter into the Agreement. (Id. at 5.) Defendants also included California within the scope of their commercial ambitions when Edmund sent solicitations via text message to

Plaintiff's California customers. (Id. at 6–8.) Third, the Court concludes that Defendants knew harm suffered by Plaintiff was likely to be suffered in California based on Edmund's viewing of Gaunitz's Facebook post regarding sale of the Arizona clinic, Edmund's trip to California to discuss the deal, and subsequent communications between Gaunitz and Edmund. (Id. at 4–5.) Accordingly, the Court concludes that it has specific personal jurisdiction over Defendants, and Plaintiff's claims meet the jurisdictional requirements.

## III. <u>Default Judgment</u>

A court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. Fed. R. Civ. P. 55(b). In determining whether to exercise its discretion to grant default judgment, a district court considers: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." <u>Geddes v. United Fin. Grp.</u>, 559 F.2d 557, 560 (9th Cir. 1977).

Here, the Court concludes that the <u>Eitel</u> factors weigh in favor of entering default judgment in favor of Plaintiff. <u>See</u> 782 F.2d at 1471–72. If the Court were to deny default judgment, Plaintiff would be left without recourse. The sum of money requested by Plaintiff is substantial, however, Plaintiff seeks statutory damages, the amount of which is left to the Court's discretion. <u>See</u> 17 U.S.C. §§ 504(c)(1), 1203(c)(3)(b). There is no indication that Defendants' failure to respond to Plaintiff's lawsuit was due to excusable neglect, and nothing indicates a possibility of dispute concerning the material facts. Although the Court recognizes the strong policy favoring decisions on the merits,

proceeding with the instant litigation would be futile given Defendants' failure to appear. See Pepsi Co, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

Finally, the Court must assess "the merits of plaintiff's substantive claim[s] . . . [and] the sufficiency of the complaint[.]" Eitel, 782 F.2d at 1471–72. In doing so, the Court concludes that Plaintiff has sufficiently shown meritorious claims for copyright infringement and falsification or alteration of copyright management information. On a claim for copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Pubs., Inc. v. Rural Telephone Service Co., Inc., 499 U.S. 340, 361 (1991) (citation omitted). "Registration is prima facie evidence of the validity of a copyright." Three Boys Music Corp. v. Bolton, 212 F.3d 477, 488–89 (9th Cir. 2000). First, Plaintiff sufficiently alleges that it owns valid copyrights to 30 photographs at issue here. (Doc. Nos. 1 ¶¶ 38–39; 10-1 at 11–12.) Plaintiff provides a certificate of copyright registration showing that the copyright to hairgrowthcenters.com is owned by Plaintiff since September 2, 2013. (Doc. No. 10-2 at 13, Exh. C.) Plaintiff also provides a certificate of copyright registration showing that Plaintiff owns since November 22, 2012 a group registration of 252 published before-and-after photographs. (Id. at 15, Exh, D.) Plaintiff alleges that this copyright covers the images allegedly infringed by Defendants. (Doc. No. 10-1 at 9.) Most of the images also include Plaintiff's watermark. (Doc. No. 1 ¶ 32.) Second, Plaintiff sufficiently alleges 48 instances of Defendants copying Plaintiff's copyrighted works. Plaintiff shows that 14 of its photographs were used on Defendants' website, 14 photographs were used on Defendants' Facebook, and 20 were used on Defendants' Instagram page. (Doc. No. 1 ¶¶ 38–39.) Accepting Plaintiff's allegations as true, Geddes, 559 F.2d at 560, the Court concludes that Plaintiff has adequately shown copyright infringement by Defendants.

/ / /

/ / /

/ / /

As for the merits of Plaintiff's claim for falsification or alteration of copyright management information, the DMCA in relevant part provides:

> No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement–(1) provide copyright management information that is false,
>
> . . .
>
> No person shall, without the authority of the copyright owner or the law–(1) intentionally remove or alter any copyright management information . . . knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of any right under this title.

17 U.S.C. § 1202(b). Copyright management information includes "the name of, and other identifying information about, the author of a work." Id. § 1202(c)(2). Plaintiff alleges that two of its photographs originally containing Plaintiff's watermark were changed by Defendants to include a "Revolution Hair Loss Institute ©" watermark, and were posted after Plaintiff's June 8, 2019 cease-and-desist letter and after the other photographs had been taken down pursuant to Plaintiff's DMCA takedown notices. (Id.) Accordingly, taking Plaintiff's allegations as true, the Court concludes that Plaintiff has sufficiently shown falsification or alteration of copyright management information.

Therefore, because the Eitel factors weigh in favor of Plaintiff, the Court enters default judgment against Defendants and in favor of Plaintiff on Plaintiff's claims for copyright infringement and falsification of copyright management information. Plaintiff argues that the two Defendants are jointly and severally liable for Plaintiff's claims on the basis of principal/agent liability. (Doc. No. 10-1 at 8–9, 16.) "[I]t is well established that a corporate officer will be liable as a joint tortfeasor with the corporation in a copyright infringement case where the officer was the dominant influence in the corporation, and determined the policies which resulted in the infringement." Foreverendeavor Music, Inc. v. S.M.B., Inc., 701 F. Supp. 791, 793–94 (W.D. Wash. 1988) (citing Sailor Music v. Mai Kai of Concord, Inc., 640 F. Supp. 629, 633 (D.N.H.1986)). It is clear from Plaintiff's allegations that Edmund was the dominant influence involved in Edmund's Holdings, LLC. Plaintiff alleges that Edmund formed Edmund's Holdings, LLC on May 18, 2017.

9

(Doc. No. 1 ¶ 18.) Plaintiff alleges that Edmund is the principal, owner, and managing member of Edmund's Holdings, LLC. (Id. at 8.) Plaintiff alleges that Edmund acted on behalf of Edmund's Holdings, LLC in using the infringing content. (Id. at 9.) Plaintiff alleges that both Edmund and Edmund's Holdings, LLC were doing business at the website on which the infringing images appear. (Id.) Accordingly, the Court concludes that Defendants are jointly and severally liable for the infringement. See 17 U.S.C. § 504(c).

## III.  **Requested Relief**

Because the Court concludes that Plaintiff is entitled to default judgment, the issue of the amount of the judgment remains. Plaintiff requests a total of $1,040,000 in statutory damages—$15,000 per image for 46 images for copyright infringement, $150,000 each for two photographs posted with false watermarks for willful copyright infringement, and $25,000 for each of the two photographs posted with false watermarks for falsification of copyright management information. (Doc. No. 10-1 at 13–14.)[1] Plaintiff also requests attorney's fees of $8,200 and costs of $546.92. (Id. at 15.)

### A.  **Statutory Damages**

#### i.  Copyright Infringement

On Plaintiff's copyright infringement claim, Plaintiff requests statutory damages of $15,000 per images for 46 images for copyright infringement, and $150,000 each for two photographs posted with false watermarks for willful copyright infringement. (Doc. No. 10-1 at 13–14.) "With respect to copyright, when statutory damages are assessed against one defendant or a group of defendants held to be jointly and severally liable, each work infringed may form the basis of only one award, regardless of the number of separate infringements of that work." Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc., 658 F.3d 936, 946 (9th Cir. 2011) (citation and internal quotation marks omitted).

---

[1] Plaintiff also requests a $15,000 award for Gaunitz based on the time he expended dealing with Plaintiff's other claims. (Doc. No. 10-1 at 15.) Plaintiff however does not move for default judgment on such claims, stating that such claims require more discovery. (Id.) Accordingly, the Court declines to grants such an award.

Accordingly, Plaintiff can only recover once for each photograph, regardless of the number of times Defendants separately infringed on that work.

Plaintiff provides 48 as the total for number of infringements but does not provide the Court with the number of images infringed on. Plaintiff however does provide as exhibits all of the alleged infringing images posted by Defendants. (See Doc. No. 10-2.) Plaintiff alleges that Defendants used 14 photographs on their website, 14 photographs on their Facebook, and 20 photographs on their Instagram. (Doc. No. 1 ¶¶ 38–39.) Some of these allegations involve multiple infringements of the same image. On Defendants' Facebook, two images are posted twice. (Doc. No. 10-2 at 33–34.) Two images are also posted twice on Defendants' Instagram. (Id. at 36–37.) A compilation of 12 images was posted both on Defendants' Facebook and Instagram. (Id. at 33, 36.) Therefore, each of these images is only counted once for the purpose of assessing statutory damages. Plaintiff provides 14 different images from Defendants' website, which are not repeated on either Defendants' Facebook or Instagram. (Doc. No. 10-2 at 17, 20, 23, 27–28.) Accordingly, after review of Plaintiff's exhibits and allegations, the Court concludes that Plaintiff is entitled to statutory damages for 32 photographs on its copyright infringement claim.

For copyright infringement, statutory damages are available in a range from $750 to $30,000, "as the court considers just." 17 U.S.C. § 504(c)(1). A court is to be guided by "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like[.]" Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990) (citation omitted). If a plaintiff elects to recover statutory damages "the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc., 259 F.3d 1186, 1194 (9th Cir. 2001) (citation omitted). Here, Plaintiff has not specified what damages it suffered as a result of Defendants' infringement, and Defendants' infringing images were only posted for a limited period of time. (Doc. No. 1 ¶¶ 27–31.) However,

the Court is also mindful of the fact that a statutory award can act as a deterrent to future infringement. See UN4 Prods., Inc. v. Primozich, No. C17-1404RSL, 2019 WL 1200513, at *3 (W.D. Wash. Mar. 14, 2019). Based on Plaintiff's pleadings and in consideration of what is just under these particular circumstances, the Court in its discretion grants Plaintiff $1,000 per photograph for 30 photographs. This is comparable to what other courts in the Ninth Circuit have awarded in instances of copyright infringement with similar severity. See, e.g., id. (awarding statutory minimum for infringement of a movie); Luminence, LLC v. Top Lighting Corp., No. 17CV1110-WQH-BLM, 2017 WL 6509582, at *3 (S.D. Cal. Dec. 20, 2017) (awarding $1,500 per infringement of hair clip packaging); BWP Media USA, Inc. v. Busca Corp., No. 13-CV-2629-BEN (MDD), 2014 WL 12856014, at *5 (S.D. Cal. July 11, 2014) (awarding $2,000 and $1,250 per image for infringement of photographs of celebrities); Perfect 10, Inc. v. Netsaits B.V., No. 10CV1773 BEN NLS, 2011 WL 531302, at *2 (S.D. Cal. Feb. 8, 2011) (awarding statutory minimum per infringement of photographs, magazines, and video productions).

Plaintiff further argues that it is entitled to heightened statutory damages on a minimum of two of the photographs because Defendants' infringement was willful. (Doc. No. 10-1 at 12.) "In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). To establish a prima facie case for willful infringement, Plaintiff must show that Defendants were aware or should have been aware that his activities were infringing. See Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003). "Willful copyright infringement, for purposes of the award of statutory damages, requires the defendant's knowledge that his conduct constitutes copyright infringement." Id. (citing Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc., 106 F.3d 284, 293 (9th Cir.1997) (vacated on other grounds)). Plaintiff alleges that two of its photographs originally containing Plaintiff's watermark were changed by Defendants to include a "Revolution Hair Loss Institute ©" watermark, and were posted after Plaintiff's June 8,

2019 cease-and-desist letter and after the other photographs had been taken down pursuant to Plaintiff's DMCA takedown notices. (Id.) Accordingly, the Court concludes that Plaintiff has sufficiently pled willful infringement for these two images. The Court has wide discretion in determining a willful statutory award and is only constrained by the statutory range. See Columbia, 259 F.3d at 1194. Based on the particular circumstances of this case, the Court in its discretion determines that $5,000 is an appropriate award for each of these two willful violations. Such an award is consistent with what other courts have granted for willful copyright infringement and serves as a sufficient deterrent. See, e.g., IO Grp., Inc. v. Jordon, 708 F. Supp. 2d 989, 1003 (N.D. Cal. 2010) (awarding $1,500 per moving picture for willful copyright infringement); Twentieth Century Fox Film Corp. v. Streeter, 438 F. Supp. 2d 1065, 1073 (D. Ariz. 2006) (granting $6,000 for willful infringement of movies).

ii.     Falsification or Alteration of Copyright Management Information

On its claim for falsification or alteration of copyright management information, Plaintiff requests maximum statutory damages of $25,000 for each of the two photographs posted with false watermarks. (Doc. No. 10-1 at 14.) Pursuant to the DMCA, a court in its discretion can award "statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000." 17 U.S.C. § 1203(c)(3)(B). "Although statutory damages are intended to serve as a deterrent, plaintiffs are not entitled to a windfall, and, consequently, the amount awarded should bear a plausible relationship to the plaintiff's actual damages." Glynn v. Cigar Store, Inc., No. 18-CV-00031-MMC, 2018 WL 3145683, at *5 (N.D. Cal. June 27, 2018) (citation and internal quotation marks omitted). Considering the circumstances present in this case, the Court concludes that $2,500 per violation for the two violations is just. This is consistent with what other courts have awarded in DMCA cases of comparable severity. See, e.g., id. (awarding $3,500 where the defendant removed the plaintiff's watermark on photograph of cigar posted on the defendant's website); Romanowicz v. Alister & Paine, Inc., No. 17CV8937PAEKHP, 2018 WL 4762980, at *6 (S.D.N.Y. Aug. 3, 2018), report and

13

recommendation adopted, No. 17CIV8937PAEKHP, 2018 WL 4759768 (S.D.N.Y. Oct. 1, 2018) (awarding statutory minimum where the defendant removed the plaintiff's name and watermark from a photograph that it then used on its website, and photograph had been taken down from the defendant's website by the time of lawsuit).

Accordingly, the Court concludes that Plaintiff is entitled to copyright infringement statutory damages of $1,000 per image for 30 images, willful copyright infringement statutory damages of $5,000 each for two images, and $2,500 each for two images on its claim for falsification of copyright management information. The total statutory damages the Court awards to Plaintiff are $45,000.

## B. Attorney's Fees and Costs

Under the Copyright Act, a court in its discretion may award reasonable attorney's fees and costs to the prevailing party. 17 U.S.C. § 505. With respect to costs, Plaintiff seeks $546.92, encompassing the filing fee and costs of service of process. (Doc. Nos. 10-1 at 15; 10-3, Johnson Decl. ¶ 25.) The Court concludes that the costs requested are reasonable and awards Plaintiff $546.92 in costs.

Plaintiff also requests attorney's fees of $8,200. (Doc. No. 10-1 at 15.) "In deciding whether to award fees under the Copyright Act, the district court should consider, among other things: the degree of success obtained on the claim; frivolousness; motivation; objective reasonableness of factual and legal arguments; and need for compensation and deterrence." Maljack Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 889 (9th Cir. 1996) (citation omitted). Based on such factors, the Court concludes that an award of attorney's fees is appropriate here. Next, the Court must decide whether the requested fees are reasonable. Attorney's fees are calculated by the lodestar method, the number of hours reasonably expended in the litigation multiplied by the reasonable hourly rate. United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 406 (9th Cir. 1990) (citations omitted). Here, Plaintiff's counsel billed Plaintiff $225 per hour, (Doc. No. 10-3, Johnson Decl. ¶ 26), which the Court concludes is reasonable. Plaintiff's counsel states that he billed over 50 hours on this matter and based on that,

requests $8,200, (Id. ¶ 27), which the Court concludes is reasonable. Therefore, the Court grants Plaintiff $8,200 in attorney's fees.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court grants Plaintiff's renewed motion for default judgment. The Court directs the Clerk of Court to enter judgment against Defendants and in favor of Plaintiff. The Court awards Plaintiff $45,000 in statutory damages and $8,746.92 in attorney's fees and costs.

**IT IS SO ORDERED.**

DATED: May 23, 2019

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT